940 So.2d 1176 (2006)
BLACK DIAMOND PROPERTIES, INC., et al., Appellants,
v.
Charles S. HAINES, Kathy Haines, et al., Appellees.
No. 5D05-1385.
District Court of Appeal of Florida, Fifth District.
September 29, 2006.
Rehearing Denied November 1, 2006.
*1177 Anne S. Mason of Mason Law, P.L., Clearwater, and Edward A. Marod of Edward A. Marod, P.A., West Palm Beach, for Appellants.
John G. Crabtree of John G. Crabtree, P.A., Key Biscayne, Edward L. Scott of Edward L. Scott, P.A., Ocala, and Scott Charlton, Tampa, for Appellees.
TORPY, J.
Appellants seek review of an order certifying a class of plaintiffs who brought suit for damages based upon purported misrepresentations that induced them to purchase memberships in a not-for-profit corporation that operates a golf course. We reverse the challenged order.
The class consists of approximately 500 people who purchased golf memberships in a club that operates a golf course in a golf community in Citrus County known as Black Diamond Ranch. All of the class members purchased residential lots and golf memberships. Some purchased their lots and memberships at the same time. Some purchased lots first, then purchased memberships later. Most, but not all, purchased their lots from the developer. Some of the class members have sold their lots, some have resigned their memberships. All seek money damages measured by the purchase price of the memberships, which ranged from $35,000 to $75,000.
Although the purchase and sale contracts for the lots were in writing, many, if not all, of the golf memberships were purchased pursuant to oral contracts. The documents used to effectuate the latter transactions consisted of membership applications, Membership Certificates, and in some cases, "Subscription Agreements." The membership applications were completed by the purchasers. Once the purchasers were approved and paid for their *1178 memberships, they were issued Membership Certificates. Some members signed "Subscription Agreements" wherein they offered to purchase memberships if approved by the club. The memberships consist of an equity interest in a not-for-profit corporation, the structure and rules for which were described in a document referred to as the "Membership Plan." Under the plan, the corporation has the right to use the golf course and facilities but does not own them. However, upon the occurrence of certain conditions precedent, the corporation has the right to acquire ownership of the facilities.
A disputed issue of fact as to some class members is whether they received the plan before they purchased their interests. Some class members admitted that they received the plan before they purchased their interests. Some said they did not receive the plan. In any event, every contract for sale and purchase of a lot made reference to the memberships and said that the "terms and conditions" were the subject of a "Membership Plan." Some of these contracts contained a written acknowledgement that the buyer had received a copy of the plan.
Appellees' complaint is that they were induced to purchase memberships by false statements, both written and oral, concerning the legal nature of the memberships. Chief among these allegations is that salespersons told Appellees that their memberships would be "equity memberships," meaning that the memberships represented an ownership interest in the golf course and facilities, rather than an ownership interest in a corporation that merely has an option to purchase the facilities. Although the plan document accurately describes the nature of the membership interests, the complaint alleges that Appellees relied upon the misrepresentations in inducing them to purchase the memberships.
The issue on appeal is the propriety of the lower court's order that certified the class. Appellants challenge numerous findings and conclusions of the trial judge. We need not address all of these issues because we conclude that class certification is not appropriate because Appellees have failed to satisfy the "commonality" and "superiority" requirements for class certification.
For an action to proceed on behalf of a class, it must be established, among other requirements, that common issues of fact predominate over the factual issues unique to each plaintiff. Liggett Group, Inc. v. Engle, 853 So.2d 434, 445 (Fla. 3d DCA 2003), approved in part, reversed in part, and remanded by, 31 Fla. L. Weekly S464, ___ So.2d ___, 2006 WL 1843363 (Fla. July 6, 2006). Additionally, the class representatives must prove that class representation is "superior to other available methods of fairly and efficiently adjudicating the claims presented." Id. When significant individual issues exist, requiring proof from each member of the class, class representation is not appropriate because the lawsuit becomes unmanageable, thereby defeating the very purposes for which class representation is authorized. Id.; Hoechst Celanese Corp. v. Fry, 753 So.2d 626, 627 (Fla. 5th DCA 2000). For these reasons, generally, claims involving allegations of fraud may not proceed as a class. Id.
Clearly, here, individual issues predominate over common issues and class representation is not practical. At the very core of plaintiffs' complaint is the allegation that oral and written misrepresentations took place in 500 separate oral contract transactions spanning many years and involving numerous sales personnel. To prove these allegations, it will be necessary *1179 that each plaintiff testify. Additionally, it will be necessary for each plaintiff to offer proof that he or she was damaged as a result of the purported misrepresentations. Finally, given the varied circumstances and span of time over which the transactions occurred, defenses applicable to some plaintiffs will not be applicable to others. Under these circumstances, class representation is not appropriate.
Citing Davis v. Powertel, Inc., 776 So.2d 971 (Fla. 1st DCA 2000), Appellees urge that a class action may proceed as to at least one of their claims, the one based on the "Little FTC Act," because the plaintiffs are not required to prove actual reliance upon the purported misrepresentations. We disagree. Even were we to agree with the holding of our sister court,[1]Powertel involved a factually distinguishable situation wherein the alleged fraud was based on nondisclosure, rather than affirmative misrepresentation. Under those circumstances, it was not necessary to call each plaintiff to establish that a misrepresentation had occurred. Moreover, all of the plaintiffs were similarly induced resulting in damages. Here, by contrast, although reliance might not be an element of one claim, each plaintiff still must demonstrate that the misrepresentation occurred and actually caused damage to him or her, which necessitates individual proof in each case.
REVERSED.
PALMER, J., concurs.
PLEUS, C.J., concurs and concurs specially, with opinion.
PLEUS, C.J., concurring specially, with opinion.
While I am sympathetic to the trial court's desire to dispose of these numerous claims, the conclusion reached by the majority is a correct one under the current law governing class certification.
NOTES
[1] As has been pointed out by the Fourth District, we too question the lack of analysis in Powertel of the causation element under a "Little FTC Act" claim. See Philip Morris USA Inc. v. Hines, 883 So.2d 292, 294 (Fla. 4th DCA 2003).