**POP's PANCAKES, INC., Zuccarelli's Italian Restaurant, Plaintiffs,**

v.

**NuCO2, INC., Defendant.**

No. 07–14157–CIV.

United States District Court, S.D. Florida, Ft. Pierce Division.

July 22, 2008.

Scott Michael Dimond, Lorenz Michel Pruss, Dimond Kaplan & Rothstein PA, Coconut Grove, FL, Chris W. Cantrell, Keith T. Belt, Jr., Belt Law Firm, Birmingham, AL, for Plaintiffs.

Gregor J. Schwinghammer, Jr., John F. Mariani, Gunster Yoakley & Stewart, West Palm Beach, FL, for Defendant.

### ORDER

DONALD L. GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Plaintiffs' Motion for Class Certification [D.E. 53].

**THE COURT** has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

### I. *INTRODUCTION*

This matter was initiated when Plaintiffs Pop's Pancakes, Inc., "Pop's", and Zuccarelli's Italian Restaurant, "Zuccarelli's", filed a three Count Class Action Complaint against the Defendant NuCO2, Inc., "NUCO" alleging violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq., ("FDUTPA"), Breach of Contract and Unjust Enrichment [D.E. 1]. Generally, Plaintiffs, who are restaurant establishments, allege that the Defendant, a provider of beverage bulk C02 equipment, entered into leasing agreements with the Plaintiffs and other class members for the use of certain beverage equipment. According to Plaintiffs, during the leasing periods, the Defendant issued property tax invoices to the Plaintiffs, which allegedly unbeknownst to the Plaintiffs and other class members, included an "administrative processing fee" which was retained by the Defendants. Plaintiffs maintain that the inclusion of the fee on the property tax invoice was a violation of FDUTPA as the Defendant failed to disclose the fee, deceptively placed the fee on the invoice, misrepresented that the full amount of the property tax invoice was to be paid to a governmental agency as a "pass-through fee", and charged an unnecessary and excessive amount for the processing fee. The Plaintiffs also allege that the Defendant breached the leasing agreements with the Plaintiffs and other class members by improperly including the fee on the property tax invoices and, in addition, allege that the Defendant was unjustly enriched by charging the "false" fees.

Defendant maintains that the property tax invoices that Plaintiffs assert were deceptive, contain an explanatory table on the back of the invoice which defines the "property tax" charge as, "[a]n annual fee on bulk C02 equipment levied by states that assess personal property taxes together with an administrative processing fee." See [D.E. 62].

In the instant Motion, Plaintiffs seek to have this action certified as a class action. [D.E. 52]. The Plaintiffs have alleged that class certification is appropriate as the Plaintiffs satisfy the requirements of Fed.R.Civ. Pro. 23(a) and of Fed.R.Civ.Pro. 23(b)(3).

Defendant has filed an Opposition to the Plaintiffs' Motion to Certify Class asserting that Plaintiffs have failed to meet the requirements for class certification under the applicable Federal Rules [D.E. 62] and Plaintiff has filed a Reply to Defendant's Opposition [D.E. 65].

### II. *LAW & DISCUSSION*

#### A. **Plaintiffs' Proposed Class**

Before reaching the issue of whether the Plaintiffs have met the class certification requirements, the Court first notes that Plaintiffs have proposed that this matter be certi-

fied into the following classes: [1]

**FDUTPA Class**

All persons and/or entities in the United States, who leased equipment from NuCO2 pursuant to either the Standard Bulk C02 Budget Plan Agreement or Standard Equipment Lease Plan Agreement, during the period of May 21, 2003 thru the date of certification, and who were assessed the full administrative processing fee of $14.00, $25, or $27.50 in any invoice. Excluded from the class are the following:(1) NUCO2 as well as it agents, parents, subsidiaries and affiliates.

**Breach of Contract Class**

All persons and/or entities in the United States, who leased equipment from NUCO2 pursuant to either the Standard Bulk C02 Budget Plan Agreement or Standard Equipment Lease Plan Agreement, during the period of May 21, 2002 thru the date of certification, and who were assessed the full administrative processing fee of $14.00, $25, or $27.50 in any invoice. Excluded from the class are the following:(1)NUCO2 as well as it agents, parents, subsidiaries and affiliates.

**Unjust Enrichment Class (plead in alternative to Breach of Contract Class).**

All persons and/or entities in the United States, who leased equipment from NUCO2 pursuant to either the Standard Bulk C02 Budget Plan Agreement or Standard Equipment Lease Plan Agreement, during the period of May 21, 2003 thru the date of certification, and who were assessed the full administrative processing fee of $14.00, $25, or $27.50 in any invoice. Excluded from the class are the following: (1) NUCO2 as well as it agents, parents, subsidiaries and affiliates.

The Court questions whether the proposed class definitions sufficiently identify proper potential class members, as the definitions are overly broad because they include all entities that leased equipment and paid a full administrative fee. Thus, even if said fee

was disclosed, part of the negotiated lease agreement, or was otherwise agreed to by the customers, the class would still improperly include those customers. *See,* e.g. *O'Neill v. Home Depot,* 243 F.R.D. 469, 477–78 (S.D.Fla.2006) (finding proposed class definition too broad as it included customers who were aware of optional nature of waiver); *Grillasca v. Hess Corporation,* 2007 WL 2121726 *5–6 (M.D.Fla., July 24, 2007) (finding proposed class adequately defined as it excluded persons who were not subject to undisclosed preauthorization request). In addition, the proposed classes seek to include those persons who were assessed an administrative fee "... thru the date of certification ...", which again is overly broad given that according to Plaintiffs, the Defendant changed the property tax invoice after the filing of this action to indicate that the charge on the invoice was a property tax "fee" instead of just a property tax [D.E. 53, ftnt. 3]. Thus, arguably persons receiving the new invoice would not have the same claim as those class members who paid the fee pursuant to the older invoice. Accordingly, the Plaintiffs' proposed class is overly broad. That notwithstanding, the Court will examine the Plaintiffs' claims for class certification pursuant to Fed.R.Civ.P. 23.

**B. Rule 23. Class Actions**

Federal Rule of Civil Procedure 23(a), which governs class actions in federal court provides, in relevant part,

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

1. The Court is aware that in the Complaint, the class identified differed from the proposed class definitions contained in the Plaintiffs' Motion for Class Certification currently before the Court. As the Plaintiffs have not sought to have class certification on the class as set forth in the Complaint, the Court limits its analysis to those class definitions contained in Plaintiffs' Motion to Certify Class [D.E. 53].

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23. These four requirements are commonly referred to as the numerosity, commonality, typicality and adequacy factors and are designed to effectively limit class claims to those fairly encompassed by the named plaintiffs' individual claims. *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1278 (11th Cir.2000) (citations and quotations omitted).

In addition, Rule 23(b) provides, *inter alia,*

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

. . .

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

Thus, pursuant to Rule 23, "[a] class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997). Plaintiffs assert that all four elements, under Rule 23(a), numerosity, commonality, typicality and adequacy are met in this action and further submit that they have satisfied rule 23(b), as there are common questions of law or fact that predominate in this case.

Before evaluating whether the Plaintiffs have satisfied the Rule 23 standards for class certification, the Court notes that its inquiry is not limited to the face of the Plaintiffs' Complaint or Motion for Class Certification. Rather, as stated by the Eleventh Circuit, "[w]hile it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984) *citing Miller v. Mackey International, Inc.,* 452 F.2d 424, 428 (5th Cir.1971). In addition, in *Huff v. N.D. Cass Company of Alabama,* 485 F.2d 710, 713 (5th Cir.1973), the Court refused to "accept the idea that to avoid infringing the plaintiff's and the class's right to jury trial district judges must be barred from making any evidentiary inquiry," and further "reject[ed] . . . the argument that the judge is inextricably bound by the face of the pleadings". (citations omitted). With these standards in mind, the Court examines the Rule 23 factors.

### 1. *Numerosity*

■ Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that less than twenty-one plaintiffs is inadequate, and more than forty class plaintiffs is generally enough to satisfy the rule. *See Cox v. Amer. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986). In order to satisfy this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *See Walco Invest., Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D.Fla.1996) (citations omitted).

In this case, Plaintiffs assert that numerosity is met as the Defendant's documents reveal that over 56,000 customers are assessed personal property taxes and are charged the

administrative fee that Plaintiffs contend is deceptive. Defendant does not seriously challenge the Plaintiffs on the numerosity element, but does maintain that the Plaintiffs' numbers are overstated [D.E. 62 at 11, n. 9]. However, even if certain customers are removed from Plaintiffs' calculations as suggested by Defendants, it is clear that the Plaintiffs have easily satisfied the numerosity factor required for class certification.

### 2. *Commonality*

Rule 23(a)(2) also requires that "there are questions of law or fact common to the class." Traditionally, commonality refers to the group characteristics of the class as a whole. *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000). However, this prerequisite does not mandate that all questions of law or fact are common; a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike. *See In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 685 (S.D.Fla.2004). "The threshold for commonality is not high." *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 490 (S.D.Fla.2003) (citations omitted). Rather, "[c]ommonality may be established where there are allegations of common conduct or standardized conduct by the defendant directed toward members of the proposed class." *Strube v. Am. Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 695 (M.D.Fla.2005).

Plaintiffs assert that the commonality requirement is easily met in this case, and in their Motion set forth the following as examples of questions of law and fact common to the class:

    a. Whether NUCO2's failure to disclose to Class Members that the administrative processing fee was not a direct pass through of Defendant's actual cost, is a violation of FDUTPA;

    b. Whether NuCO2's property tax invoice is deceptive by failing to separately itemize and disclose the administrative processing fee;

    c. Whether NUCO2 concealed the administrative processing fee by disguising it as a tax;

    d. Whether NUCO2 improperly represents the administrative processing fee as a pass-through charge;

    e. Whether NuCO2's definition of "PROPERTY TAX" on the back of the invoice is deceptive;

    f. Whether the invoice is deceptive pursuant to FDUTPA;

    g. Whether there is a profit component to the administrative processing fee;

    h. Whether the Plaintiff and the Class are "consumers" under Fla. Stat. § 501.203(7);

    i. Whether NUCO2 was unjustly enriched to the detriment of Plaintiff and the Class;

    j. Whether NUCO2's practice of charging the administrative processing fee violates the standard Budget Plan and ELPP agreements.

*See* [D.E. 53 at 8]. Further, Plaintiffs assert that the commonality requirement is met as the Defendant engaged in common conduct towards the class by sending identical, and allegedly deceptive, property tax invoices to the Plaintiffs. Defendant counters that Plaintiffs' allegations fail to satisfy the requirement for commonality for class certification purposes because Defendant's alleged standardized conduct of sending property tax invoices to the Plaintiffs occurred under varying circumstances and under different contracts.

After reviewing the evidence submitted in this matter, the Court finds that the potential Plaintiffs do not meet the commonality threshold. More specifically, Gary Geyser, a salesman for NUCO for over nine years, was deposed and stated that he was taught to explain anything in the agreements to the customers they "sat down with" and that he explains the charges that he is aware of to every customer, including the administrative fee on the property tax [D.E. 65–3 at 61].

In addition, Randy Gold, the corporate representative from NUCO was deposed and stated that NUCO has approximately thirty (30) sales people [D.E. 53–2 at 13], and that the sales representatives are ordered to disclose the administrative processing fees to the customers [D.E. 65–4 at 142]. He also

testified that while there are generally four different contracts customers have with the Defendant, two of which are subject to the assessment of property taxes, that every month some customers switch from a contract where no equipment is leased, and thus, no property tax assessed to one where the customer leases the equipment from NUCO. Mr. Gold also testified that there were various administrative processing fees charged based upon individual negotiations with the various customers, which can only be determined by reviewing the individual customer's agreement. Finally, Mr. Gold testified that the administrative fee is to cover NUCO's cost of processing and filing returns and passing the cost along to the customer.

Thus, Plaintiffs' proposed class definition of "All persons ... who leased equipment from NUCO2 pursuant to either the Standard Bulk C02 Budget Plan Agreement of Standard Equipment Lease plan Agreement ... and who were assessed the full administrative processing fee of $14.00, $25, or $27.50 in any invoice" fails to state a common cause of action for each class plaintiff for deceptive practices or breach of contract by the Defendant, as the circumstances regarding the disclosure and assessment of the full administrative processing fee could vary greatly. In this regard, the Plaintiffs' proposed class is much like the class in *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469 (S.D.Fla.2006), in that there are a number of issues not common to the class and defenses that may be raised by the Defendant that will be individual to each class plaintiff. *Accord, Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984). In this case, it is not whether the class members received a property tax invoice that is the pertinent common element, but rather whether the invoice was deceptive to that particular plaintiff. As such, while there are some questions that are common to the proposed class, the pertinent questions are not, and thus the class does not meet the commonality requirement.

### 3. *Typicality*

■ Closely related to the element of commonality is the third prerequisite for class certification that the representative plaintiff's claims "are typical of the claims ... of the class" Fed.R.Civ.P. 23(a)(3). The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citation omitted); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case. *See Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D.Fla.1990); see also *Hillis v. Equifax Consumer Serv., Inc.*, 237 F.R.D. 491, 499 (N.D.Ga.2006) (citation omitted) ("Typicality cannot be satisfied when a named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.").

In this matter, for the reasons discussed above, the Court does not find that the named Plaintiffs' claims are typical of the potential class members. In particular, both named Plaintiffs have claims that may be atypical of the class to the extent that the representations made to them before receiving the property tax invoice, and after receiving the invoice are different from other class members, and thus the fact that one of the named Plaintiffs may be able to prove its case, would not necessarily establish the elements necessary to prove the other class members' cases, specifically whether the property invoice was deceptive. Thus, the typicality requirement is not met.

### 4. *Named Plaintiffs as Adequate Class Representatives*

The fourth element of the Rule 23(a) analysis requires that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement "involves questions [1] of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and [2] of whether plaintiffs have interests antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755

F.2d 1516, 1533 (11th Cir.1985); accord *Valley Drug*, 350 F.3d at 1189.

As with numerosity, Defendant does not seriously challenge the Plaintiffs as adequate class representatives and this Court finds that the Plaintiffs are adequate representatives as their counsel are qualified and the Plaintiffs' interests are not antagonistic to those of the rest of the class.

## C. Common Legal and Factual Issues under Rule 23(b)(3)

■ Although the Court has determined that the Plaintiffs fail to meet the commonality and typicality requirements under Rule 23(a), the Court further finds that the Plaintiffs also fail to satisfy the requirements under Rule 23(b). In their Motion for Certification, Plaintiffs have asserted that the elements of Rule 23(b)(3) are met as common legal and factual issues predominate this matter. Defendant argues in response that Plaintiffs are unable to satisfy the requirements as, after any class wide issues are resolved, the class plaintiffs would still be required to present a great deal of individualized proof in order to prevail on their individual claims.

For the following reasons, the Court agrees with the Defendants. First, while under Rule 23(b)(3), "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions," *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir.2004) citing *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 687, 697 (N.D.Ga.2002), the predominance inquiry is still far more demanding than Rule 23(a)'s commonality requirement. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, at 1005 (11th Cir.1997) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 2249–50, 138 L.Ed.2d 689 (1997)). That common questions of law or fact predominate over individualized questions means that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989)

(quoting, *Nichols v. Mobile Bd. Of Realtors*, 675 F.2d 671, 676 (5th Cir. Unit B 1982)).

Thus, "[c]ommon issues of fact and law" predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana*, 382 F.3d 1241, 1255 (11th Cir.2004) citing *Ingram v. Coca–Cola Co.*, 200 F.R.D. 685, 699 (N.D.Ga.2001). Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). *Id.* (citation omitted).

In determining whether class or individual issues predominate in a putative class action suit, courts must take into account "the claims, defenses, relevant facts, and applicable substantive law," and to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant. In so doing, "courts examine the causes of action asserted in the complaint on behalf of the putative class." *Id.* at 1254. Finally, whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. *Id.* at 1255.(citing *Rutstein v. Avis Rent–A–Car Sys.*, 211 F.3d 1228, 1234 (11th Cir.2000)).

The Plaintiffs maintain that the predominance element is satisfied as the elements of Plaintiffs' FDUTPA claim are subject to common proof. More specifically, Plaintiffs state that the Defendant is guilty of three FDUTPA violations by, 1) "... craft[ing] the invoice with the effect of deceiving the Plaintiff and the Class into believing the Property Tax identified in the property tax invoice was the true assessed tax rate and/or was entirely a pass-through charge remitted to the proper governmental entity"; 2) failing to adequately disclose the administrative fee; and, 3) failing to disclose to customers the large profit component to the administrative fee. *See* [D.E. 53 at 12]. Further, Plaintiffs

argue that the test of whether a violation of FDUTPA occurred based upon the property tax invoice is "whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* Plaintiffs maintain that "... if the invoice is deceptive for one, it is deceptive for all." *Id.*

However, under FDUTPA, a litigant must demonstrate three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006). Thus while in this case, Plaintiffs may state a claim for some of the plaintiffs under FDUTPA, the Plaintiffs' arguments regarding predominance of issues related to their allegations against the Defendant fail to account for those customers who fall within the class description, who either were told, prior to receiving the property tax invoice, that the invoice included an administrative fee, or, those customers who read the back of the invoice and understood, based upon that reading, that the "property tax" fee on the front of the invoice included an administrative fee. In either of those two cases, the question of whether "a consumer acting reasonably in the same circumstances" would be deceived, yields a different answer. Indeed, a consumer who knew, either by being told by a salesperson or other NUCO employee, or by reading the back of the invoice, that the property tax fee included an administrative charge, could not reasonably assert that they were likely to be deceived by the invoice. Thus, the resolution of Plaintiffs' first allegation, whether the invoice was "crafted ... with the *effect* of deceiving the ... class", would necessarily require an individual inquiry into each class plaintiff's knowledge and understanding regarding the fee. Similarly, Plaintiffs' second contention that Defendant failed to adequately disclose the administrative fee would also be subject to the same inquiry, as the fee may have well been disclosed by a NUCO salesperson or through the definition on the invoice.

As to the Plaintiffs' third contention that the Defendant violated FDUTPA by failing to disclose to customers the large profit component to the administrative fee, again, whether the fee and/or any profit component of the fee was disclosed, either prior to issuance of the invoice or prior to payment of the invoice, would depend on an individual inquiry into each plaintiff's interaction with NUCO.

In this regard this case is very similar to *O'Neill v. The Home Depot U.S.A., Inc.,* 243 F.R.D. 469 (S.D.Fla.2006), wherein class certification was denied to Florida Home Depot customers that alleged that Home Depot violated FDUTPA by charging a ten percent "damage waiver" to rental customers, that allegedly was not disclosed as optional and did not provide any additional protection to the customer. The court held, *inter alia,* that the plaintiff failed to establish that common questions of law and fact predominated the action as required by Rule 23(b). In arriving at its conclusion, the court found that the individual experiences of each customer in purchasing the "damage waiver" would vary and that under FDUTPA, each class member would have to show that they were misled by Home Depot employees by demonstrating that they were 1) never informed of the optional nature of the damage waiver, the act of which was a deceptive trade practice; and 2) that the failure to disclose caused each proposed class plaintiff damage. *Id.* at 480. *Accord, Marino v. Home Depot U.S.A. Inc.,* 245 F.R.D. 729 (S.D.Fla.2007) (denying class certification where plaintiff claimed defendant's employees failed to inform consumer of certain costs although defendant's standard policy was to inform consumers of pricing and thus, each class member would have to state whether defendant's employee informed them of the cost); *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997)(finding district court's certification of class erroneous as a matter of law as plaintiff's allegations of discrimination would require distinctly case-specific inquiries into each allegation); *Rutstein v. Avis Rent–A–Car Sys.,* 211 F.3d 1228, 1234 (11th Cir.2000)(same).

Plaintiffs attempt to distinguish this case from *O'Neill v. Home Depot,* by asserting that this matter does not involve an inquiry into each individual plaintiff's involvement with an employee of NUCO, but rather involves the uniform property tax invoice is-

sued to all customers by NUCO. See [D.E. 65 at 9]. Again, however Plaintiffs fail to acknowledge that whether the invoice was deceptive depends, in part, on the knowledge and/or understanding of each NUCO customer. In other words, the Plaintiffs' contention that a deceptive invoice for one, would necessarily be deceptive for all, is not true, given the facts of this case.

Even a cursory examination of the common questions of law and fact set forth by the Plaintiffs in their Motion, demonstrates the need for individual inquiry of each class member. *See*, discussion of common questions of fact, *supra*, at p. 682. *See also*, [D.E. 53 at 8–9]. Specifically, three of the common questions that Plaintiffs set forth require a finding that the Defendant either failed to disclose the administrative processing fee or concealed the processing fee. Another question requires a finding of whether the Defendant misrepresents the processing fee as a pass-through charge, and two other questions require a finding that the invoice is deceptive, which necessarily would require inquiry into whether a plaintiff read the back of the invoice and, if so, whether the plaintiff understood the property tax invoice.

To avoid this conclusion, the Plaintiffs rely heavily on *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. 3rd DCA 2000) to support their contention that predominance is met in this action. In *Latman*, a Florida State Appellate court reversed a state district court where the district court denied class certification to a group of plaintiffs that alleged that a cruise line charged them port-fees as pass through charges, when in reality the cruise line kept a portion of the fees for itself. The reviewing court determined that the plaintiff had properly stated a cause of action under FDUPTA. The reviewing court stated that the relevant inquiry was "... how a reasonable consumer would interpret the term 'port charges'". *Id.* at 703. The court answered that question by concluding that a reasonable consumer would interpret the term "port charges" as a "pass through" charge that the cruise line would pay to the port authorities, and that therefore, there was no need to show reliance, or that the

plaintiff would not have otherwise paid the fee.

In this case, unlike *Latman*, the question of what is reasonable, particularly in light of the consumers being business entities, is predicated in large part, on what was understood by the customers when they read the property tax invoice, including consideration of what had been to be represented to them, or what their understanding was through their own reading of the back of the invoice. Thus, it is not the Plaintiffs' reliance that is at issue, but whether it was reasonable under the circumstances, which vary for each Plaintiff, for each Plaintiff to not know that the property tax included an administrative processing fee. *Id.*

In *Agan v. Katzman & Korr*, 222 F.R.D. 692 (S.D.Fla.2004), cited by Plaintiffs for support of their Motion, for example, the issue of knowledge or disclosure to each individual plaintiff was irrelevant as the claims arose under the Fair Debt Collection Practices Act (FDCPA) and the Florida Consumer Collection Practices Act (FCCPA) which related to the illegality of the form letters issued to the plaintiffs, irrespective of the plaintiff's knowledge regarding the defendant's acts. In other words, there would be no need in *Agan*, unlike in the instant matter, to determine if the defendant had disclosed certain fees or otherwise provided information about any fees to the plaintiff in order to resolve the underlying issue of whether the Defendant's acts were deceptive. *Accord, Macarz v. Transworld Sys.*, 193 F.R.D. 46, 54 (D.Conn.2000)(finding that under Fair Debt Collection Practices Act, class certification was appropriate as same improper form letter sent to all plaintiffs).

Plaintiffs further point to *Davis v. Powertel Inc.*, 776 So.2d 971 (Fla. 1st DCA 2000) to assert that a showing of reliance by the consumer is not necessary to certify a class action suit under FDUTPA. However, in *Davis*, the court found that the general claims by the plaintiffs were that the overall deceptive practice of not informing the consumers of certain limitations of their cell phones, resulted in an overall reduced value of the telephones. More importantly, the decision in *Davis v. Powertel*, which is not

binding upon this Court, has been criticized by several other courts for its failure to analyze the causation element. *See Philip Morris USA, Inc. v. Hines,* 883 So.2d 292, 294 (Fla. 4th DCA 2003); *Black Diamond Properties, Inc. v. Haines,* 940 So.2d 1176, 1179 n. 1 (Fla. 5th DCA 2006).

Finally, most recently in *Egwuatu v. South Lubes, Inc.,* 976 So.2d 50 (1st DCA Fla.2008), the holding in *Davis* seemingly was limited by the same court that issued the *Davis* opinion, as the *Egwuatu* court held that, although it is not necessary to demonstrate reliance in order to present a class action claim under a statutory action for a deceptive trade practice, that proposition did not mean that a deceptive trade practice claim is always amenable to class litigation. *Id.* at 53. Significantly, the facts in *Egwuatu* are very similar to the ones herein, as the plaintiffs in that case sought class certification for claims based upon an environmental fee that the defendant allegedly mis-represented as a tax in violation of FDUTPA. The reviewing court affirmed the trial court's decision to deny class certification based upon the differences in factual claims by the plaintiffs as the defendant had "... employed a variety of methods over the years to inform customers that the environmental fee was not a tax." *Id.* at 53.

Moreover, the Court finds this case distinguishable from other cases involving consumer fraud given the nature of the interaction between the potential plaintiffs and the Defendant. In many of the cases cited by the Plaintiffs, the consumers had a one-time purchase or interaction with the defendant business and thus, there were no additional issues regarding other representations or negotiations between the consumer and that business. Therefore, in those situations, the deceptive nature of the receipt, invoice or ticket could be determined without inquiry into the knowledge of the consumer based upon other representations that might have eliminated any confusing and/or deceptive aspects of the receipt, invoice or ticket. In this matter, the property tax invoice does not reveal the entirety of the transaction between the Parties related to the property invoice. Rather, the lease agreements, the oral representations, the verbage on the back of the invoice, and any other interaction that the business may have had with the consumer must be considered to resolve whether the property tax invoice was deceptive.

■ As to Plaintiffs' claims for breach of contract and unjust enrichment, Plaintiffs assert that the claims of the class may be proven by similar proof. However, for the breach of contract claim, the lease agreements which are the source of the Plaintiffs' breach of contract claim may vary from customer to customer. In fact, the two Plaintiffs named herein, Pop's Pancakes and Zucarelli's, both have different terms in their contracts, and, as mentioned previously, the Defendant apparently uses a different contract for some Budget Plan customers that states that an administrative fee is included in the property tax. *See,* [D.E. 65–5]. *See also,* [D.E. 62–3]. Thus, again an individual inquiry would necessarily have to be conducted to determine whether a breach of contract had occurred based upon each contract.

■ Plaintiffs finally assert that NuCO was unjustly enriched by "raking" in millions of dollars from the implementation of the administrative fee that "1) was represented to be a pass-through charge to be remitted to the government; 2) was not adequately disclosed; and/or 3) bears no rational relation to either Defendant's cost of processing the personal property taxes or the actual assessed property tax rate." [D.E. 53 at 19]. Again the resolution of these issues, much like those raised under Plaintiffs' FDUTPA claims require individual inquiry as to the disclosure of the fee, the representations made about the fee, and the amount of the individual administrative fee and property tax assessment of each class member. As such, the Plaintiffs's claims of unjust enrichment do not satisfy the requirements of Rule 23.

Thus, based on the foregoing analysis, that Plaintiffs have failed to satisfy the requirements of Fed.R.Civ.P. 23, and therefore this action is not appropriate for class certification.

## D. Jurisdiction

Having determined that this matter is inappropriate for class certification, the Court must now examine the claims of the individual Plaintiffs, Pop's Pancakes and Zucarrelli's Italian Restaurant.

Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases. *Beavers v. A.O. Smith Elec. Products Co.*, 265 Fed.Appx. 772, 777 (11th Cir.2008) citing *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1260–61 (11th Cir.2000). Thus, [a] federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises. *Id.* citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n. 4 (11th Cir.1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.* (citations omitted). When Plaintiffs are the party asserting diversity jurisdiction they have the burden to "affirmatively allege facts demonstrating the existence of jurisdiction." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994). Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir.2001)(citing 28 U.S.C. § 1332(a)). Finally, diversity jurisdiction requires complete diversity—every plaintiff must be diverse from every defendant. *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir.1994).

■ Plaintiffs herein filed this action asserting that this Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) as the controversy exceeds $5 million and the putative class includes more than 100 members. However, section d of 28 U.S.C. § 1332, applies only to class actions. *See*, 28 U.S.C.A. § 1332(d)(2). In particular, 28 U.S.C.A. § 1332(d)(2) grants the district court original jurisdiction over any civil action which the matter in controversy exceeds the sum or value of $5,000,000.00 *and* is a class action. Thus, given that the Court has declined to certify the class in this action, jurisdiction of this action may not be predicated upon 28 U.S.C.A. § 1332(d)(2).

■ Accordingly, given that the Plaintiffs' claims arise under FDUTPA, and common law claims of breach of contract and unjust enrichment, rather than, federal statutory or constitutional claims, the only source of this Court's jurisdiction is diversity of citizenship pursuant to 28 U.S.C.A. § 1332(a). However, it is clear, that the Plaintiffs' claims fail to meet either the monetary threshold or the complete diversity requirement of this provision. Specifically, in the Complaint, the Plaintiffs allege that the Defendant deceptively added a $25.00 fee to quarterly tax invoices and assert that NuCO's policy and practice of charging customers falsely inflated tax charges has dramatically increased NuCO's profits, with NuCO improperly pocketing at least $100.00 in profit per lease-equipment customer, per year. [D.E. 1 at 7]. Thus, Plaintiffs, in essence, assert that each potential plaintiff incurred a fee of $100.00 per lease per year. Therefore, in order for each Plaintiff to individually satisfy the $75,000 threshold required for diversity jurisdiction, each Plaintiff would have had to maintain leases far in excess of those alleged to be held by the Plaintiffs herein. In addition, Zuccarelli's Italian Kitchen is based in Palm Beach, Florida, according to the Complaint, and thus does not have complete diversity with the Defendant. Plaintiffs therefore are unable to establish diversity jurisdiction. Thus, the Court lacks subject matter jurisdiction over this matter and it must therefore be dismissed.

## III. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Class Certification [D.E. 53] is **DENIED.** It is further

**ORDERED AND ADJUDGED** that this matter is dismissed for lack of subject matter jurisdiction. It is further

**ORDERED AND ADJUDGED** that all pending motions are **DENIED as moot.**

**DONE AND ORDERED.**